UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
ELISSA HESS, AS TRUSTEE FOR THE EH   :
LIVING TRUST, Individually and on Behalf   :
of All Others Similarly Situated,   :
                                     :
                  Plaintiff,   :
                                       :
     vs.   :
                                         :
ALIBABA GROUP HOLDING LIMITED,   :
DANIEL ZHANG and MAGGIE WU,   :
                                       :
               Defendants.   :
———————————————————— x

Civil Action No. 1:21-cv-00136

<u>CLASS ACTION</u>

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff, individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Alibaba Group Holding Limited ("Alibaba" or the "Company"), Company press releases and media reports about the Company.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities fraud class action on behalf of all purchasers of Alibaba American Depositary Shares ("ADSs") between July 9, 2020 and December 23, 2020, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 ("1934 Act").  These claims are asserted against Alibaba and certain of its officers who made materially false and misleading statements during the Class Period in press releases and filings with the SEC.

2.      Defendant Alibaba is the largest e-retailer in the world and operates, among other online marketplaces, Tmall, an online and mobile commerce platform.  Alibaba also owns a 33% equity interest in Ant Small and Micro Financial Services Group Co., Ltd. ("Ant Group"), a financial technology company best known for operating Alipay, a mobile and online payment platform.

3.      On July 20, 2020, Ant Group announced it was preparing for its initial public offering ("IPO"), which aimed to raise $34 billion.  Alibaba represented that the IPO would be a significant boon to the Company, as the market was purportedly "assigning very little value to [its] stake in Ant Group."

4.      Unbeknownst to investors, Alibaba and its founder Jack Ma had structured Ant Group to evade critical Chinese banking regulations.  For example, as Ant Group grew to become a dominant force in Chinese e-commerce, Alibaba dropped "Financial" from its name and claimed in IPO offering materials that "Ant Group is not a financial institution."  This representation was material to investors, because, if true, it allowed Ant Group to avoid onerous capital requirements and other regulations, such as the requirement that Ant Group fund at least 30% of loans issued rather than the mere 2% it was currently funding.  In addition, as Alibaba built its e-commerce empire, it used its dominant market position to strong-arm Tmall merchants into signing exclusive cooperation pacts preventing them from offering products on rival platforms in violation of Chinese antitrust laws.

5.      On November 2, 2020, the *Financial Times* reported that Chinese regulators had conducted "regulatory interviews" with Ant Group's controller Jack Ma, executive chairman Eric Jing, and Chief Executive Officer Simon Hu.  The article stated that the executives received a "dressing down by authorities."  The article also included a statement from Ant Group that it will "'implement the meeting opinions in depth.'"

6.      On November 3, 2020, Ant Group suspended its IPO because Ant Group "may not meet listing qualifications or disclosure requirements due to material matters."  As *Bloomberg* explained, "[i]f the Ant IPO gets back on track, analysts are predicting a much lower valuation with multiples closer to banks, as the regulatory risks show it's more 'fin' than 'tech.'"  On this news, the price of Alibaba's ADSs fell more than 8%.

7.      On November 10, 2020, China's anti-monopoly regulator, the State Administration for Market Regulation ("SAMR"), published draft rules aimed at curtailing Alibaba's coercive cooperation pacts, causing Alibaba ADSs to suffer another 8% decline.

8.     Then, on December 23, 2020, Chinese authorities revealed an antitrust investigation into Alibaba itself, acting on reports that Alibaba had improperly pressured merchants to exclusively sell goods on Tmall.  Regulators stressed the need to "'guide Ant Group to implement financial supervision, fair competition and protect the legitimate rights and interests of consumers.'"  On this news, the price of Alibaba's ADSs fell 13% – the biggest one-day decline ever.

9.     Throughout the Class Period, defendants violated the federal securities laws by disseminating false and misleading statements to the investing public and/or failing to disclose adverse facts pertaining to the Company's business, operations and prospects.  Specifically, defendants knew, or recklessly disregarded, but failed to disclose the following adverse facts:

(a)     That Alibaba had illicitly sought to circumvent Chinese laws and regulations, including laws regulating financial institutions and prohibiting anticompetitive behavior;

(b)     That Ant Group was predominantly a financial company subject to onerous Chinese banking regulations, including greater capital requirements than were disclosed to investors, rather than predominantly a technology company as represented;

(c)     That, as a result of the foregoing, Ant Group's growth, prospects and the value proposition of the Ant Group IPO were far smaller than represented;

(d)     That Alibaba had forced merchants using its Tmall platform to sign coercive exclusivity agreements and had engaged in other anticompetitive behavior; and

(e)     As a result, Alibaba's public statements were materially false and/or misleading at all relevant times.

10.     As a result of defendants' wrongful acts and omissions, plaintiff and the Class (as defined below) purchased Alibaba ADSs at artificially inflated prices and were damaged thereby.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder by the SEC.

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the 1934 Act.

13.     Venue is proper in this District pursuant to §27 of the 1934 Act and 28 U.S.C. §1391(b).  Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

14.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the U.S. mails, interstate telephone communications, and the facilities of the New York Stock Exchange ("NYSE").

## PARTIES

15.     Plaintiff Elissa Hess, as Trustee for The EH Living Trust, purchased Alibaba ADSs during the Class Period as set forth in the accompanying certification and was damaged thereby.

16.     Defendant Alibaba is a Cayman Islands corporation with its headquarters located in Hong Kong.  Alibaba's ADSs trade on the NYSE under the ticker symbol "BABA."

17.     Defendant Daniel Zhang ("Zhang") served as Chief Executive Officer ("CEO") of Alibaba during the Class Period.

18.     Defendant Maggie Wu ("Wu") served as Chief Financial Officer ("CFO") of Alibaba during the Class Period.

19.     The defendants referenced above in ¶¶17-18 are referred to herein as the "Individual Defendants."  The Individual Defendants made, or caused to be made, false statements that artificially inflated the price of Alibaba securities during the Class Period.  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Alibaba's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions with the Company and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false and misleading statements pleaded herein.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

20.     Defendants are liable for: (a) making false statements; or (b) failing to disclose adverse facts known to them about Alibaba.  Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Alibaba ADSs was a success, as it: (a) deceived the investing public regarding Alibaba's business and prospects; (b) artificially inflated the price of Alibaba ADSs; and (c) caused plaintiff and other members of the Class to purchase Alibaba ADSs at artificially inflated prices.

## DEFENDANTS' SCIENTER

21.     During the Class Period, defendants had the motive and opportunity to commit the alleged fraud, including by attempting to conduct one of the largest initial public offerings in

history – the Ant Group IPO – at artificially inflated prices. Defendants also had actual knowledge of the misleading statements they made and/or acted in reckless disregard of the truth at the time. In doing so, defendants participated in a scheme to defraud and committed acts and practices and participated in a course of business that operated as a fraud or deceit on purchasers of Alibaba ADSs during the Class Period.

## FACTUAL BACKGROUND

22.     Alibaba claims to be the largest retail commerce business in the world, operating: (i) Taobao Marketplace, China's largest mobile commerce destination; (ii) Tmall, the world's largest third-party online and mobile commerce platform for brands and retailers; and (iii) Alibaba.com, China's largest international online wholesale marketplace. These three businesses alone account for more than half of all online retail sales in China. In addition to its e-commerce, cloud computing, digital media, and innovation segments, Alibaba owns a 33% equity interest in Ant Group, an unconsolidated related party best known for operating Alipay, one of the largest mobile and online payment platforms with more than 900 million active users. Alibaba relies on Alipay to conduct substantially all of the payment processing and all of the escrow services for the Company's marketplaces. Alibaba and Ant Group were founded by Jack Ma – China's richest individual and one of its most influential entrepreneurs.

23.     In addition to its online payment business, Ant Group offers Huabei, its consumer credit platform that allows consumers to "buy now and pay later." Ant Group's consumer credit business is based on the originate-to-distribute model. The originator, here Ant Group, finds the customers, extends them credit – typically unsecured – and then offloads those loans onto third-party banks. In turn, Ant Group charges a fee, which offsets its minimal capital commitment, and keeps as much as 40% of the interest payments. Importantly, Ant Group funds a mere 2% of the

loans it issues, passing the rest of the exposure onto banks.  In doing so, Ant Group circumvents Chinese regulations, which mandate that banks fund at least 30% of loans.

24.     As early as July 2018, Chinese authorities were aiming to end Ant Group's scheme by designating Ant Group a financial holding company and thus requiring it to meet the 30% loan funding requirement.  In response, Alibaba misled regulators and the investing public alike by masquerading Ant Group as a technology company rather than a bank.  For example, a month before announcing the IPO, Ant Group rebranded itself to emphasize its technological rather than its financial offerings, after earlier drawing scrutiny from regulators.  Ant Group also changed its name from "Ant Small and Micro Financial Services Group Co. Ltd." to "Ant Technology Group Co."  In IPO offering documents, Ant Group declared that "[t]oday, Ant Group is not a financial institution, nor simply a mobile payments company.  We are a technology company using the best technologies and resources to empower banks and financial institutions to serve every consumer and small business."  Executives similarly labeled Ant Group a "Techfin" rather than a "Fintech" company, further downplaying Ant Group's financial heritage and banking operations, along with the attendant regulatory risks.

**DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS
AND OMISSIONS ISSUED DURING THE CLASS PERIOD**

25.     The Class Period begins on July 9, 2020.  On that date, Alibaba filed its annual report on Form 20-F with the SEC.  The annual report stated that Alibaba's "business practices do not violate anti-monopoly or unfair competition laws."  Although the annual report acknowledged the material importance to Alibaba's business of complying with Chinese antitrust laws, it claimed that "there can be no assurance that regulators will not initiate anti-monopoly investigations into specific business practices we have adopted" due to the Company's "large scale of business and close media attention."  In so stating, Alibaba concealed that it had knowingly violated Chinese

antitrust laws for years and forced its Tmall merchants to sign exclusive cooperation pacts preventing them from offering products on rival platforms. Far from a function of the Company's "large scale" or unwarranted "media attention," Alibaba had systematically engaged in abusive market behavior, for example by punishing merchants who attempted to sell goods on both Tmall and its rival platforms, by preventing merchants from participating in high-traffic promotions on Alibaba services, and by selectively moving disfavored merchant listings lower down in search results on Alibaba platforms.

26.     On July 20, 2020, Ant Group announced it was preparing for its IPO, which aimed to raise $34 billion. In the release, Ant Group's Executive Chairman and Alibaba director Eric Jing stated that the IPO was possible due to recent exchange rule changes that would allow "'global investors to access leading-edge technology companies from the most dynamic economies in the world.'"

27.     Defendants also represented that the IPO would be a significant boon to the Company because of Alibaba's financial stake in Ant Group. For example, on September 30, 2020, Alibaba's CFO, defendant Wu, addressing the Company's Investor Day audience, asserted that "the market is also assigning very little value to our stake in Ant Group. Well, since many of you want to invest in Ant and you're looking for allocation, you know the valuation, and the market will soon tell the valuation."

28.     On October 21, 2020, Alibaba filed a Form 6-K with the SEC. In a section entitled "Ant Group has announced its arrangements for initial public offering and listing," the release stated in pertinent part:

> Ant Group Co., Ltd. ("Ant Group"), an unconsolidated related party of Alibaba Group Holding Limited ("Alibaba"), today published an announcement on the Shanghai Stock Exchange regarding the arrangements for its initial public offering and listing on the Shanghai Stock Exchange STAR board (the "A Share

Offering") and certain information regarding its concurrent initial public offering and listing on The Stock Exchange of Hong Kong Limited (the "H Share Offering" and together with the A Share Offering, the "Offering").

Alibaba currently holds ordinary shares of Ant Group and Class C shares of Ant International Co., Limited ("Ant International"), a subsidiary of Ant Group, that together represent 33% of the equity interest in Ant Group, assuming the completion of the redemption and subscription arrangement described below.

The A Share Offering and H Share Offering will initially comprise 1,670,706,000 A shares and 1,670,706,000 H shares, respectively. Pursuant to a redemption and subscription arrangement, Ant International will redeem all Class B and Class C shares of Ant International and Ant Group will issue 3,256,446,324 H shares to holders of Class B shares and Class C shares of Ant International (including 1,158,572,686 H shares to Alibaba). In addition, for each of the A Share Offering and the H Share Offering, Ant Group expects to grant the underwriters an over- allotment option to purchase additional shares representing no more than 15.00% of the number of shares initially offered.

Alibaba has agreed to subscribe for 730 million A shares as part of the placement to strategic investors in the A Share Offering, subject to receipt of required regulatory approvals and fulfillment of other customary conditions precedent.

We understand that the final structure, price and timing of the Offering will be contingent upon market conditions and other factors, and there can be no assurance as to if and when the Offering will be completed.

29.     On October 26, 2020, Alibaba filed a Form 6-K with the SEC. In a section entitled

"Ant Group has announced the launch of its concurrent initial public offerings in Shanghai and

Hong Kong," the release stated in pertinent part:

Ant Group Co., Ltd. ("Ant Group"), an unconsolidated related party of Alibaba Group Holding Limited ("Alibaba"), today announced the launch of its concurrent initial public offerings in Shanghai (the "A Share Offering") and Hong Kong (the "H Share Offering" and together with the A Share Offering, the "Offering"), in each case with a fixed price. The offer prices for the A Share Offering and H Share Offering have been set at RMB68.80 per share and HK$80.00 per share, respectively.

As previously announced on October 21, 2020, Alibaba has agreed to subscribe for 730 million A shares as part of the placement to strategic investors in the A Share Offering (the "Subscription"). Based on the offer price of RMB68.80 per share, the total consideration for the Subscription would be approximately RMB50.2 billion. The Subscription is subject to receipt of required regulatory

- 9 -

approvals and fulfillment of other customary conditions precedent. Based on the subscription of 730 million A shares, Alibaba expects to hold approximately 31.8% of the equity interest in Ant Group following the Offering, or 31.2% of the equity interest in Ant Group if the underwriters exercise in full their options to purchase additional shares in both the A Share Offering and H Share Offering.

30.     The statements referenced above were materially false and misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to defendants or recklessly disregarded by them:

(a)     That Ant Group was predominantly a financial company subject to onerous Chinese banking regulations, including greater capital requirements than were disclosed to investors, rather than predominantly a technology company as represented;

(b)     That, as a result of the foregoing, Ant Group's growth, prospects and the value proposition of the Ant Group IPO were far smaller than represented;

(c)     That Alibaba had forced merchants using its Tmall platform to sign coercive exclusivity agreements and had engaged in other anticompetitive behavior; and

(d)     As a result, Alibaba's public statements were materially false and/or misleading at all relevant times.

31.     On November 2, 2020, the *Financial Times* reported that Chinese regulators had met with Ant Group controller and Alibaba founder Jack Ma, its executive chairman and Alibaba director Eric Jing, and its Chief Executive Officer Simon Hu. The article stated that, although regulators did not provide details, "the Chinese word used to describe the interview – *yuetan* – generally indicates a dressing down by authorities."  The article also included a statement from Ant Group that it will "'implement the meeting opinions in depth.'"

32.     Following the meeting, Chinese authorities stated that Ant Group would have to fund 30% of all the loans it issued, like all Chinese banks.

33.     On November 3, 2020, Ant Group stunned investors by suspending its IPO because Ant Group "may not meet listing qualifications or disclosure requirements due to material matters."  In a statement, Ant Group stated in part:

> Ant Group Co., Ltd. ("Ant Group"), an unconsolidated related party of Alibaba Group Holding Limited, announced that it was notified by the relevant regulators in the PRC today that its proposed A share listing on the Shanghai Stock Exchange STAR board is suspended as Ant Group may not meet listing qualifications or disclosure requirements due to material matters relating to the regulatory interview of its ultimate controller, executive chairman and chief executive officer by the relevant regulators and the recent changes in the Fintech regulatory environment.  Consequently, Ant Group's concurrent proposed H share listing on the Main Board of The Stock Exchange of Hong Kong Limited is also suspended.

34.     According to the Shanghai Stock Exchange, Ant Group had reported "significant issues such as the changes in financial technology regulatory environment," which "may result in [the] company not meeting the conditions for listing or meeting the information disclosure requirements."

35.     As *Bloomberg* explained, "[i]f the Ant IPO gets back on track, analysts are predicting a much lower valuation with multiples closer to banks, as the regulatory risks show it's more 'fin' than 'tech.'"  On this news, the price of Alibaba's ADSs fell more than 8%.

36.     On November 10, 2020, SAMR published draft rules aimed at curtailing Alibaba's exclusive cooperation pacts.  On this news, the price of Alibaba's ADSs fell an additional 8%.

37.     Subsequently, on December 15, 2020, Eric Jing delivered a public apology during a speech at the 4th China Internet Finance Forum, admitting that Ant Group was "'looking into the mirror, finding out our shortcomings, and conducting a body check-up.'"

38.     Then, on December 23, 2020, Chinese authorities revealed that they had launched an antitrust investigation into Alibaba's monopolistic practices.  Specifically, SAMR disclosed that it was acting on reports that Alibaba was pressuring its Tmall merchants to commit to not

selling on competitors' platforms.  Separately, Chinese regulators disclosed that they would meet with Ant Group to "'guide Ant Group to implement financial supervision, fair competition and protect the legitimate rights and interests of consumers'" – casting another cloud over a potential revival of the Ant Group IPO.

39.     On this news, the price of Alibaba's ADSs fell an additional 13% – the Company's biggest one-day decline ever.

40.     On December 29, 2020, *The Wall Street Journal* reported that under a restructuring road map that China's financial regulators had laid out, Ant Group "would return to its roots as an online-payment provider akin to PayPal Holdings Inc., while its more profitable investment and loan businesses would be curtailed."  The article further reported that the Chinese "regulators, led by the central bank, also ordered Ant to form a separate financial holding company that would be subject to the kind of capital requirements applied to banks."  Additional media reports have since stated that Chinese regulators are contemplating even more draconian measures – including a potential breakup of Ant Group and the forced sale of Ant Group assets.

41.     As a result of defendants' wrongful acts and omissions, plaintiff and the Class purchased Alibaba ADSs at artificially inflated prices and were damaged thereby.

**LOSS CAUSATION AND ECONOMIC LOSS**

42.     During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Alibaba ADSs and operated as a fraud or deceit on purchasers of Alibaba ADSs.  As detailed above, when the truth about Alibaba's misconduct was revealed, the value of the Company's ADSs declined precipitously as the prior artificial inflation no longer propped up the ADSs' price.  The decline in the price of Alibaba ADSs was the direct result of the nature and extent of defendants' fraud being revealed to investors and the market.  The timing and magnitude of the share price declines negate

any inference that the losses suffered by plaintiff and other members of the Class were caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to defendants' fraudulent conduct.  The economic loss, *i.e.*, damages, suffered by plaintiff and other Class members was a direct result of defendants' fraudulent scheme to artificially inflate the price of the Company's ADSs and the subsequent significant decline in the value of the Company's ADSs when defendants' prior misrepresentations and other fraudulent conduct were revealed.

43.     At all relevant times, defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by plaintiff and other Class members.  Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Alibaba's business and operations as alleged herein. Throughout the Class Period, defendants issued materially false and misleading statements and omitted material facts necessary to make defendants' statements not false or misleading, causing the price of Alibaba ADSs to be artificially inflated.  Plaintiff and other Class members purchased Alibaba ADSs at those artificially inflated prices, causing them to suffer damages as complained of herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

44.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine.

45.     At all relevant times, the market for Alibaba ADSs was efficient for the following reasons, among others:

(a)     Alibaba ADSs met the requirements for listing and were listed and actively traded on the NYSE, a highly efficient market;

(b)      as a regulated issuer, Alibaba filed periodic public reports with the SEC; and

(c)      Alibaba regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases on major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

46.      As a result of the foregoing, the market for Alibaba ADSs promptly digested current information regarding Alibaba from publicly available sources and reflected such information in the price of Alibaba ADSs.  Under these circumstances, all purchasers of Alibaba ADSs during the Class Period suffered similar injury through their purchase of Alibaba ADSs at artificially inflated prices, and a presumption of reliance applies.

47.      A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on defendants' material misstatements and/or omissions.  Because this action involves defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects – information that defendants were obligated to disclose – positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

**NO SAFE HARBOR**

48.    Defendants' false or misleading statements during the Class Period were not forward-looking statements ("FLS"), or were not identified as such by defendants, and thus did not fall within any "Safe Harbor."

49.    Alibaba's verbal "Safe Harbor" warnings accompanying its oral FLS issued during the Class Period were ineffective to shield those statements from liability.

50.    Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Alibaba who knew that the FLS was false. Further, none of the historic or present-tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made.

**CLASS ACTION ALLEGATIONS**

51.    Plaintiff brings this action on behalf of all purchasers of Alibaba ADSs during the Class Period who were damaged thereby (the "Class").  Excluded from the Class are defendants and their immediate families, the officers and directors of the Company and their immediate families, the legal representatives, heirs, successors or assigns of any of the foregoing, and any entity in which any of the defendants have or had a controlling interest.

52.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Alibaba ADSs were actively traded on the NYSE. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class located geographically throughout the country.  Joinder would

- 15 -

be highly impracticable.  Record owners and other members of the Class may be identified from records maintained by Alibaba or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

53.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of the federal laws complained of herein.

54.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

55.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)     whether defendants acted knowingly or with deliberate recklessness in issuing false and misleading statements;

(c)     whether the price of Alibaba ADSs was artificially inflated during the Class Period because of defendants' conduct complained of herein; and

(d)     whether the members of the Class have sustained damages and, if so, the proper measure of damages.

56.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

57.     Plaintiff incorporates ¶¶1-56 by reference.

58.     During the Class Period, defendants disseminated or approved the false or misleading statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

59.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

      (a)     employed devices, schemes, and artifices to defraud;

      (b)     made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

      (c)     engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Alibaba ADSs during the Class Period.

60.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Alibaba ADSs.  Plaintiff and the Class would not have purchased Alibaba ADSs at the prices they paid, or at all, had they been aware that the market prices were artificially and falsely inflated by defendants' misleading statements.

61.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Alibaba ADSs during the Class Period.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

62.     Plaintiff incorporates ¶¶1-61 by reference.

63.     During the Class Period, the Individual Defendants acted as controlling persons of Alibaba within the meaning of §20(a) of the 1934 Act.  By virtue of their positions and their power to control public statements about Alibaba, the Individual Defendants had the power and ability to control the actions of Alibaba and its employees.  Alibaba controlled the Individual Defendants and its other officers and employees.  By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding plaintiff and the members of the Class damages and interest;

C.     Awarding plaintiff's reasonable costs, including attorneys' fees; and

D.     Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  January 7, 2021                    ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                           SAMUEL H. RUDMAN


                                           _____
                                                   *s/ Samuel H. Rudman*
                                              SAMUEL H. RUDMAN

                                           58 South Service Road, Suite 200
                                           Melville, NY  11747
                                           Telephone:  631/367-7100
                                           631/367-1173 (fax)
                                           srudman@rgrdlaw.com

                                           ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                           BRIAN E. COCHRAN
                                           JUAN CARLOS SANCHEZ
                                           655 West Broadway, Suite 1900
                                           San Diego, CA  92101-8498
                                           Telephone:  619/231-1058
                                           619/231-7423 (fax)
                                           bcochran@rgrdlaw.com
                                           jsanchez@rgrdlaw.com

                                           Attorneys for Plaintiff

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

Elissa Hess as Trustee for The EH Living Trust ("Plaintiff") declares:

1.      Plaintiff has reviewed a complaint and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|---|---|---|---|

*See* attached Schedule A.

5.      Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

None.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ___6___ day of January, 2021.

DocuSigned by:

*Elissa Hess*

D5F39538BA04435...

Elissa Hess as Trustee for The EH Living Trust

ALIBABA

**SCHEDULE A**

**SECURITIES TRANSACTIONS**

**ADR**

| Date Acquired | Amount of Shares Acquired | Price |
|---|---|---|
| 11/03/2020 | 75 | $283.99 |
| 11/05/2020 | 75 | $284.56 |

Prices listed are rounded up to two decimal places.